*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DR. TIMOTHY MEYER,

　　　　　Plaintiff-Appellant,

v

OAKLAND COMMUNITY COLLEGE BOARD
OF TRUSTEES, JOHN MCCULLOCH, SUSAN
ANDERSON, SHIRLEY BRYANT, PAMELA
DAVIS, and PAMELA JACKSON,

　　　　　Defendants-Appellees.

UNPUBLISHED
January 7, 2020

No. 345738
Oakland Circuit Court
LC No. 2018-164535-CB

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in favor of defendants. We affirm the trial court's grant of summary disposition in defendants' favor with respect to plaintiff's claim for breach of contract and for plaintiff's claim of violation of the Open Meetings Act (OMA) to the extent plaintiff seeks invalidation of the Board's decision and/or injunctive relief. We reverse the trial court's determination that plaintiff failed to state a claim for a violation of the OMA to the extent that plaintiff seeks statutory damages, and remand for proceedings consistent with this opinion.

Defendants are comprised of the Oakland Community College Board of Trustees (the Board), and the specifically named board members acting in their official capacities as board members. Plaintiff is the former chancellor of Oakland Community College (OCC). He was hired as the chancellor pursuant to a January 1, 2012 contract which provided that it was effective for an initial three-year period, then automatically renewed unless terminated or converted to a fixed three-year term on or after January 1, 2017. The contract also contained specific provisions regarding requirements to terminate plaintiff.

On May 16, 2017, the Board met held a meeting. After an open session, the Board adjourned into a closed session. When it returned to open session, the Board approved "the plan" presented in the closed session.[1] After the session ended, plaintiff was verbally informed that his contract was being terminated by the Board. He thereafter received a letter informing him that he was being placed on paid administrative leave pending further notification of the Board. Plaintiff was sent a letter on May 22, 2017, indicating that his termination would be effective as of July 6, 2017.

On March 21, 2018, plaintiff filed a complaint against the OCC Board and its members, alleging breach of his employment contract and violation of the Open Meetings Act, MCL 15.261 *et seq*. In lieu of answering plaintiff's complaint, the OCC Board of Trustees moved for summary disposition pursuant to MCR 2.116(C)(7) and (8). A hearing was held on the motion on September 5, 2018. In a September 13, 2018 opinion and order, the trial court found that defendants[2] did not breach the termination provision of the employment contract and that plaintiff did not establish any damages for any breach of the contract. The trial court further found that it was without jurisdiction to grant plaintiff's requested relief with respect to its claim concerning the OMA and that plaintiff's allegations as stated in his complaint do not set forth a violation of the OMA. The trial court thus granted defendants' motion for summary disposition. This appeal followed.

This Court reviews a trial court's grant or denial of summary disposition de novo. *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 287; 731 NW2d 29 (2007). Summary disposition should be granted under MCR 2.116(C)(7) if "[t]he claim is barred because of . . . statute of limitations . . ." among other things. *Id*. at 288. In reviewing a motion under subrule (C)(7), a court accepts as true the plaintiff's well-pleaded allegations of fact, construing them in the plaintiff's favor, and must consider affidavits, pleadings, depositions, admissions, and any other admissible documentary evidence submitted by the parties, to determine whether a genuine issue of material fact exists. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010).

"A motion for summary disposition under subrule (C)(8) tests the legal sufficiency of the pleadings alone." *Id*. Thus, when deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true, construing them in the light most favorable to the nonmoving party. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010). Summary disposition under subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Id*. at 305 (quotation marks and citation omitted).

The proper interpretation of a contract is a question of law that we review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). In

---

[1] The minutes of the Board meeting do not specify what "the plan" was.

[2] Because the individually named defendants were sued in their official capacity of OCC Board members, the trial court treated the Board's motion for summary disposition as having been filed on behalf of all defendants.

interpreting a contract, this Court's obligation is to determine the intent of the parties and we do so by examining the language of the contract according to its ordinary and plain meaning, if such meaning is apparent. *In re Smith Tr*, 274 Mich App 283, 285; 731 NW2d 810, 811–12 (2007). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written." *Id*. at 812.

Plaintiff first argues on appeal that the trial court erred in granting defendants' motion for summary disposition on his breach of contract claim where no discovery had yet taken place and where there is a factual dispute as to whether defendants' action in terminating his contract was consistent with the contract's timing provisions. Summary disposition is generally premature if granted before discovery on a disputed issue is complete. *State Treasurer v Sheko*, 218 Mich App 185, 190; 553 NW2d 654 (1996). "However, summary disposition is not premature if the discovery does not stand a fair chance of uncovering factual support for opposing the motion for summary disposition." *Id*. That is the case here.

The contract at issue was attached to plaintiff's complaint and is thus part of the pleadings.[3] The contract provides that plaintiff's employment as Chancellor of Oakland Community College commences on January 1, 2012, and, "subject to the provisions of Section 7," ends on January 1, 2015. The contract further states that the parties intend for the contract to be "evergreen," meaning that the term of employment would automatically renew, but that:

> at any time on or after January 1, 2017, the Board may, at its discretion, convert the Term to a fixed three year term, which shall expire at the end of three years following such conversion. The Board shall provide written notice to Dr. Meyer of its election to convert the Term of this Contract to a fixed three year term.

Section 7 of the contract provides, in relevant part:

> **Termination.** Dr. Meyer's employment as Chancellor can be terminated during the Term or prior to its expiration as follows:
>
> * * *
>
> C. The Board may terminate this Contract without Just Cause after forty-five (45) days of providing written notice to the Chancellor, and upon a two-thirds majority vote of the full Board. The termination of Dr. Meyer's employment as Chancellor for his death or disability shall not constitute termination without Just Cause.

Plaintiff asserts that the above provision sets forth a three-step chronological process by which he could be terminated without cause and that defendants' failure to follow the process in the specific order required breached the parties' contract. According to plaintiff, first, written notice

---

[3] Once attached to the complaint, a written instrument required to be attached to the complaint under MCR 2.113(C), such as a contract, becomes part of that pleading for all purposes. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

must be provided to him. Next, 45 days must pass after the written notice was provided. Third, after the 45-day period has passed, a vote of the Board must take place and if 2/3 of the Board voted to do so, he may be terminated. Plaintiff's interpretation ignores the clear language of the contract.

A party asserting a breach of contract must establish that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). Under long standing contract principles, if contractual language is clear, construction of the contract is a question of law for the court. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 547; 904 NW2d 192 (2017). If the contract, although perhaps inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous and the unambiguous contractual language must be enforced as written. *Id*.

Section 7 of the contract provides that the Board may terminate the contract without just cause "after forty-five (45) days of providing written notice to the Chancellor, and upon a two-thirds majority vote of the full Board." Clearly, the Board must provide written notice to defendant, which it did in a May 22, 2017 letter to him. The letter provides, in part:

> I hereby inform you, on behalf of the Oakland Community College Board of Trustees ("Board"), that effective July 6, 2017, the Chancellor Employment Contract between you and the Board which became effective January 1, 2012 (the "Contract") is hereby terminated.

> The Board approved the termination of the Contract on May 16, 2017, upon a two-thirds majority vote of the full Board. At this time, termination of the Contract is without just cause pursuant to paragraph 7.C of the Contract.

Written notice having been provided on May 22, 2017, the Board could terminate him 45 days after having provided the written notice so long as 2/3 of the full Board voted to do so. Plaintiff's termination was to be effective July 6, 2017—exactly 45 days after the written notice of termination was provided to him.

Plaintiff contends that a 2/3 majority vote of the Board must take place only *after* the 45 days set forth in the contract have passed. We read no such requirement in the contract. The termination provision provides that the Board may terminate him without just cause "after forty-five (45) days of providing written notice to the Chancellor, *and* upon a two-thirds majority vote of the full Board" (emphasis added). The only chronological requirement is that the Board must provide notice to plaintiff 45 days prior to his termination. The vote of the Board contains no such timing requirement. It simply provides that a two-thirds majority of the Board must vote terminate him before termination can take place. The vote is an additional general provision, not one that is required to take place after the 45-day notice period. The provision states at the outset that the Board "may terminate this Contract without Just Cause after forty-five (45) days of providing written notice to the Chancellor . . . ." Had it been intended that the second requirement, a 2/3 majority vote of the Board, take place only *after* the 45-day notice period, the contract would have been worded to include it in that provision. For example, the contract could have provided that the Board may terminate the contract if "the Board provides written notice to

-4-

[plaintiff], 45 days after the notice have elapsed and, after the 45-day period, 2/3 of the majority of the full Board thereafter votes to terminate [plaintiff]." The contract does not do so. It simply provides that a 2/3 majority vote of the Board is *also* required prior to termination. We cannot and will not read words into a contract that are not plainly there. *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013). Moreover, this Court's reading and application of the clear contractual language is the only logical reading, given that, in order for the Board to take the action of providing a notice of termination to plaintiff, it must have taken some *initial* action agreeing to provide such notice (such as a majority vote).

In this case, a two-thirds majority vote of the full Board approving the termination of the contract took place on May 16, 2017. Because the requirements of the termination provision set forth in section 7 of the contract were followed, plaintiff is unable to prove a breach of contract based on violation of that section. The claim is thus so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Dalley*, 287 Mich App at 305. Summary disposition was appropriate on plaintiff's breach of contract claim under MCR 2.116(C)(8).

Plaintiff next argues that the trial court erred in granting defendants' motion for summary disposition on his violation of the OMA claim when he properly pled facts showing that defendants' violated the OMA. We review a trial court's grant of summary disposition de novo, *Al-Shimmari*, 477 Mich at 287, and also review issues of statutory construction de novo. *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 584; 821 NW2d 896 (2012). We review for an abuse of discretion a trial court's decisions whether to invalidate a decision made in violation of the OMA and whether to grant or deny injunctive relief. *Morrison v City of E Lansing*, 255 Mich App 505, 520; 660 NW2d 395 (2003), abrogated on other grounds by *Speicher v Columbia Tp Bd of Trustees*, 497 Mich 125; 860 NW2d 51 (2014). However, whether a trial court has subject-matter jurisdiction over a claim is a question of law that is reviewed de novo. *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000).

The OMA generally requires meetings, decisions, and deliberations of a "public body" to be open to the public. MCL 15.263(1), (2), and (3). The OMA defines the term "public body" for its purposes to include:

> any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function; a lessee of such a body performing an essential public purpose and function pursuant to the lease agreement; or the board of a nonprofit corporation formed by a city under section 4o of the home rule city act, 1909 PA 279, MCL 117.4o. [MCL 15.262(a)]

The OMA defines a "meeting" as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy, or any meeting of the board of a nonprofit corporation formed by a city under section 4o of the home rule city act, 1909 PA 279, MCL 117.4o." MCL 15.262(b). And, it defines a "decision" as a "determination, action, vote, or disposition upon a motion, proposal, recommendation,

resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d). A public body is permitted to meet in a closed session only for specific purposes listed in MCL 15.268.

It is undisputed that the Board is a public body, that it conducted a meeting on May 16, 2017, that during the meeting it met in a closed session, and that thereafter, in an open session on the same date, it approved a plan presented in the closed session. Plaintiff alleged in his March 21, 2018 complaint that it was in this closed session meeting that the Board voted and agreed to terminate his employment, and that its deliberation and decision made in a closed session violated the OMA. In his complaint, plaintiff requested that the decision be invalidated, that he be awarded statutory damages for the violation, and for "injunctive and/or declaratory relief under the [Open meetings Act]." However, under MCL 15.270(3):

> The circuit court shall not have jurisdiction to invalidate a decision of a public body for a violation of this act unless an action is commenced pursuant to this section within the following specified period of time:

> (a) Within 60 days after the approved minutes are made available to the public by the public body . . . .

The minutes for the May 16, 2017 meeting were signed and available on or about June 21, 2017. Thus, in order for the circuit court to have jurisdiction to invalidate the decision made at the meeting, plaintiff would have to have filed his complaint within 60 days of June 21, 2017. Plaintiff did not file his complaint until March 21, 2018. The trial court thus had no jurisdiction to invalidate the Board's decision.

Plaintiff contends that MCL 15.270(3) is a statute of limitations and that it is inapplicable because the parties' agreed to a one year statute of limitations in their contract. Plaintiff is mistaken.

A "statute of limitations" is "a law that bars claims after a specified period; specif., a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." Black's Law Dictionary (11th ed.). "Jurisdiction," on the other hand, is "[a] court's power to decide a case or issue a decree." *Id*. Subject-matter jurisdiction pertains to a court's abstract power over a class of cases, regardless of the particular facts of the case. *In re Complaint of Knox*, 255 Mich App 454, 457; 660 NW2d 777 (2003).

MCL 600.605 states that "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except . . . where the circuit courts are denied jurisdiction by the constitution or statutes of this state." A jurisdictional challenge need not be asserted in a responsive pleading to avoid waiver. MCR 2.111(F)(2). A defense of lack of subject-matter jurisdiction cannot be waived by a litigant, and "subject-matter jurisdiction cannot be granted by implied or express stipulation of the litigants." *Vernier*, 242 Mich App at 316. Moreover, a court must take notice when it lacks jurisdiction. *In re AMB*, 248 Mich App 144, 167; 640 NW2d 262 (2001). Because the circuit court was denied jurisdiction to hear or determine a

claim to invalidate the Board's decision for violation of the OMA pursuant to MCL 15.270(3), the court properly dismissed plaintiff's claim for violation of the OMA to the extent that plaintiff sought invalidation of the Board's decision.[4]

Plaintiff also, however, requested that he be awarded statutory damages for defendants' purported violation, and for "injunctive and/or declaratory relief" under the OMA. MCL 15.273 provides, in relevant part, that:

> (1) A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action.

> (2) Not more than 1 action under this section shall be brought against a public official for a single meeting. An action under this section shall be commenced within 180 days after the date of the violation which gives rise to the cause of action.

The parties' agreement contains a provision, at Section 16, whereby the parties to the contract agreed that "any action, claim or suit against the College arising out of the Chancellor's employment or termination of employment . . . must be brought within one (I) year of the event giving rise to the claims or be forever barred. The Chancellor waives any limitation periods to the contrary, unless such waiver is prohibited by law." The parties to the contract being plaintiff and the Board, this provision is inapplicable to any individual Board member. Plaintiff's March 21, 2018 complaint with respect to the Board and seeking statutory damages was, however, timely and defendants do not argue otherwise.

This necessarily brings this Court to the issue of whether plaintiff adequately pleaded a claim for violation of the OMA. Plaintiff asserted in his complaint that the Board violated the OMA by going into closed session to purportedly receive a written opinion of counsel, but instead (or additionally) by discussing plaintiff's termination, then returning to public session to vote to approve an unidentified "plan as presented in closed session."

A public body may meet in a closed session only for specific purposes identified in MCL 15.268. Defendants assert and the minutes of the May 16, 2017 Board meeting indicate that a motion was made to go into closed session to "discuss labor negotiations and consider a written opinion of counsel." These purposes are expressly allowed under MCL 15.268, but "the scope of the discussion in closed session must legitimately relate to legal matters, and not bargaining,

---

[4] Although the trial court granted summary disposition on this claim under MCR 2.116(C)(8) and dismissal would be more appropriate under MCR 2.116(C)(4), we may uphold a trial court's ruling on appeal when the right result issued. *Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

economics, or other tangential nonlegal matters." *Booth Newspapers, Inc v Wyoming City Council*, 168 Mich App 459, 468; 425 NW2d 695 (1988). Plaintiff alleged in his complaint that the allowance for closed sessions in MCL 15.268(a), (c), and (e) did not apply to the termination of his contract[5] and that, even if the Board initially went into closed session for a reason other than discussing plaintiff's termination, his termination was clearly and improperly discussed and voted upon in the closed session.[6] Plaintiff also pleaded that the May 16, 2017 vote in closed session and the May 16, 2017 vote in open session to approve "the plan" violated the OMA because there was no fair notice of what was being deliberated or voted upon. Because MCL 15.263(2) and (3) require that all decisions and deliberations of a public body "shall" take place at a meeting open to the public, except as provided in MCL 15.267 and MCL 15.268 and plaintiff pleaded that the deliberations, vote, and decision concerning the termination of his contract were not done in open session, plaintiff sufficiently pleaded a claim for violations of the OMA. This Court reviews a motion for summary disposition premised upon MCR 2.116(C)(8) by reviewing the pleadings alone, and by accepting all well-pleaded factual allegations in the pleadings as true, *Dalley*, 287 Mich App at 304–05. Plaintiff having sufficiently pleaded a claim for violation of the OMA, plaintiff's claim for statutory damages arising from the alleged violation of the OMA was improperly dismissed by the trial court.

While plaintiff also requested injunctive relief on his violation of OMA claim, it is not clear what action of the Board, specifically, plaintiff seeks to enjoin or how compliance with the OMA concerning plaintiff's specific allegations could be compelled. MCL 15.271 provides, in part:

> (1) If a public body is not complying with this act, the attorney general, prosecuting attorney of the county in which the public body serves, or a person may commence a civil action to compel compliance or to enjoin further noncompliance with this act.

Plaintiff's allegations with respect to violations of the OMA were that the Board impermissibly discussed and voted upon the termination of his contract in a closed session and then voted in open session to approve an unidentified "plan." These actions are specific to plaintiff, have already taken place and, because the trial court is without jurisdiction to invalidate the Board's decision to terminate plaintiff's contract for a violation of the OMA per MCL 15.270(3), will not recur. "Merely because a violation of the OMA has occurred does not automatically mean that an injunction must issue restraining the public body from using the violative procedure in the future." *Nicholas v Meridian Charter Tp Bd*, 239 Mich App 525, 533–34; 609 NW2d 574 (2000), abrogated on other grounds by *Speicher*, 497 Mich 125. Moreover, "injunctive relief is

---

[5] It has not been argued that any of the remaining subsections in MCL 15.268 apply, nor do they appear to this Court to apply.

[6] Defendants do not dispute that plaintiff's termination was discussed in the closed session. Indeed, in the notice of termination letter sent to plaintiff, the Board stated that "[t]he Board approved the termination of the Contract on May 16, 2017, upon a two-thirds majority vote of the full Board."

an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury" and, where "there is no reason to believe that a public body will deliberately fail to comply with the OMA in the future, injunctive relief is unwarranted." *Id*. Plaintiff has not pleaded or established entitlement to injunctive relief for any alleged violation of the OMA.

We affirm the trial court's grant of summary disposition in defendants' favor with respect to plaintiff's claim for breach of contract and for plaintiff's claim of violation of OMA to the extent plaintiff seeks invalidation of the Board's decision and/or injunctive relief. We reverse the trial court's determination that plaintiff failed to state a claim for a violation of the OMA to the extent that plaintiff seeks statutory damages and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra