*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re Parole of CHARLES LEE.

MONROE COUNTY PROSECUTOR,

      Appellee,

v

CHARLES LEE,

      Appellant,

and

MICHIGAN PAROLE BOARD,

      Intervenor.

UNPUBLISHED
January 23, 2020

No. 347539
Monroe Circuit Court
LC No. 18-141225-AP

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

RIORDAN, J. (*dissenting*)

I respectfully dissent.

Although the trial court recited a number of incorrect facts in support of its decision, I conclude that it nonetheless reached the right result. "A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003), citing *Mulholland v DEC Int'l Corp*, 432 Mich 395, 411 n 10; 443 NW2d 340 (1989). I would therefore affirm the trial court's order reversing the Michigan Parole Board's (the Board) decision to grant defendant parole.

The Board's decision to grant parole is reviewed for an abuse of discretion. *In re Parole of Spears*, 325 Mich App 54, 59; 922 NW2d 688 (2018). "[T]he challenging party has the burden to show either that the Board's decision was a clear abuse of discretion or was in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency

regulation." *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011) (quotation marks and citation omitted); MCR 7.118(H)(3). An abuse of discretion occurs when a "decision falls outside the range of reasonable and principled outcomes." *Spears*, 325 Mich App at 59, quoting *Elias*, 294 Mich App at 538. Despite the broad discretion afforded it, the Board is constrained by MCL 791.233(1)(a), which provides that "[a] prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety."

Defendant was granted parole once before, in March 2006. Three months later he stalked a teenage girl for three days before he was arrested, convicted of aggravated stalking, and re-incarcerated. Defendant contends that since that time he has changed his ways. Indeed, since his re-incarceration, defendant has taken advantage of many programs offered by the Michigan Department of Corrections. However, during that same time frame, defendant also accrued four major misconduct violations, he provided deceptive responses during his participation in the Violence Prevention Program, and he provided inconsistent information regarding his history of substance abuse during his Sex Offender Therapy sessions. As recently as November 2017, defendant requested two books from the prison inter-library loan system which were highly sexual in nature. Moreover, the Board has granted defendant parole on two prior instances, only to reverse itself both times. In light of these facts—in particular defendant's history of recidivism while on parole and the outpatient setting of the Residential Sex Offender Program— the Board's conclusion that there exists a reasonable assurance that defendant will not become a menace to society or to the public safety falls outside the range of principled outcomes. Therefore, I would affirm.

/s/ Michael J. Riordan